**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KOFI BAYETE,

                Plaintiff,

        v.

STATE OF NEW JERSEY DEPARTMENT
OF CORRECTIONS, et al.,

                Defendants.

Civil Action No. 22-2975 (KMW) (EAP)

**OPINION**

**WILLIAMS**, District Judge:

    This matter comes before the Court on Defendants' motion for summary judgment. (ECF No. 34.) Plaintiff filed a response to the motion (ECF No. 37), to which Defendants replied. (ECF No. 40.) Also before the Court is Defendants' motion to seal portions of the record containing Plaintiff's confidential personal records and prison procedures. (ECF No. 36.) Because of the nature of the records in question, the lack of opposition to the motion to seal, and the privacy interests involved, this Court grants the motion to seal. For the following reasons Defendants motion for summary judgment shall be granted, Plaintiff's federal claims shall be dismissed for lack of exhaustion, and Plaintiff's state law claims will be remanded to state court.

**I.    BACKGROUND**

    During the operative timeframe of his complaint, Plaintiff was a prisoner confined in South Woods State Prison. (ECF No. 34-2 at 2; ECF No. 37-1 at 1.) Prior to his transfer to South Woods in 2014, Plaintiff has used a wheelchair for transportation. (*Id.*) Plaintiff has a history of knee and

back related issues, including multiple total knee replacements, which have contributed to his need for the wheelchair. (*Id.*) In June 2020, Plaintiff refused a housing transfer and was moved to a detention unit within the prison. (*Id.*) Plaintiff was ultimately placed in cell 1024 of the C-Pod housing unit. (ECF No. 34-2 at 3-4; ECF No. 37-1 at 1-2.) Plaintiff asked to be moved to an adjacent cell which had an electrical outlet so that he could use a word processor to work on his criminal appeal, and that request was granted the same day. (*Id.*) Plaintiff was moved to cell 1023, which had an outlet, on July 14, 2020, but was not promised or guaranteed that he could remain in that cell indefinitely. (*Id.*)

On August 11, 2020, Plaintiff was informed that he was being moved out of cell 1023 to a different cell in the unit which lacked an outlet. (*Id.*) The parties disagree over which officers told Plaintiff of the move – records provided by Defendants indicate that Sergeant Corson, Sergeant Pipitone, and Officer Detetta were present and told Plaintiff he needed to move, while Plaintiff testified that Defendant Joubert was present and told him he was being moved on the administrator's orders. (*Id.*) Joubert, however, maintains that he was not present and was working elsewhere at the time of the incident. (ECF No. 34-2 at 5.) Plaintiff became upset at the news and told the officers, "I don't know what I might do" if forced to leave cell 1023, which the officers interpreted as a possible threat of self-harm. (ECF No. 34-2 at 5, ECF No. 37-1 at 2.) Plaintiff was thereafter examined by psychiatric staff and placed on suicide watch and moved to a holding cell. (*Id.*)

Plaintiff underwent an initial medical check and was cleared for placement in a constant watch cell, in which he was subject to 24 hour video monitoring. (ECF No. 34-2 at 6-7; ECF No. 37-1 at 3.) Medical personnel cleared Plaintiff to have only the following during the watch period: a "suicide gown, suicide blanket, suicide mattress, other-finger food only." (*Id.*) Medical did not indicate that Plaintiff should have access to his wheelchair while on watch, though Plaintiff

2

believes he should have had access to it in light of his general permission to use a wheelchair in the prison. (*Id.*)

Plaintiff thereafter spent three full days in the suicide watch cell without access to a wheelchair. (*Id.*) During those three days, Defendants Joubert and Pipitone assert they were working elsewhere in the prison and did not have further direct interaction with Plaintiff, a point Plaintiff denies, testifying that each saw him laying on the floor. (*Id.*) According to Plaintiff, while in the watch cell, he "couldn't get up and walk around" and had to "crawl on my hand and knees" to get to his food or medication, which caused his knee pain to worsen. (ECF No. 37-3 at 17-22.) Plaintiff was provided medication and three meals a day including milk or juice. (*Id.* at 25-26.) Plaintiff testified that he had difficulty using the restroom as he couldn't stand properly, and therefore had to relieve himself on the floor, which thereafter required him to crawl through his waste to get his food and medication. (*Id.* at 22-24.) Plaintiff was provided a device in which to defecate, but was unable to use it properly and did not defecate while in the watch cell. (*Id.* at 26, 31-32.) Plaintiff testified that he complained to the officers who came to check on him, with no results for three days. (*Id.* at 27-29.) After approximately three days in the watch cell, a Lieutenant Costa entered, saw Plaintiff's state, and ordered that he be brought his chair as he needed it to get around. (*Id.* at 19, 27.) Plaintiff was then taken out of the watch cell and moved to a cell with a medical bed. (*Id.*)

Plaintiff's medical records indicate that he was placed in constant watch on the advice of psychiatric staff following his statements to guards because Plaintiff "refused to engage adequately with medical and mental health services" such that they could clear him of a self harm risk without a stay in a watch cell. (ECF No. 34-2 at 11.) Plaintiff was seen by medical staff several times while in the watch cell, including on August 11, 2020 at 7:56 p.m., when he refused to talk to a staff member who visited him. (*Id.* at 10.) A nurse thereafter visited Plaintiff the following

3

morning at 1:34 a.m., but Plaintiff had "no concerns [or] complaints" at that time. (*Id.*) Later that day, at 3:15 p.m., psychiatric staff noted plaintiff's unwillingness to engage with them. (*Id.* at 11.) At 12 a.m. on August 13, a nurse returned and Plaintiff told her he was tired from crawling across the floor to retrieve food and medication, but the nurse told him she was not allowed to enter the cell further pursuant to suicide watch regulations to give him medication. (*Id.*) Following the return of Plaintiff's wheelchair at approximately 8 p.m. on August 13, 2020, Plaintiff was seen again by a nurse and cleared for a transfer to the new cell with the bed. (*Id.*) Medical staff saw Plaintiff again the following morning at 6:59 a.m., where no major issues were noted. (*Id.* at 11-12.) Plaintiff's records thus indicate that he was in the watch cell from his refusal to move cells on August 11 until approximately 8 p.m. on August 13, 2020. (*Id.*) Plaintiff, however, insisted he remained in the watch cell without a wheelchair until the morning of August 14. (ECF No. 34-7 at 31.)

## II.  LEGAL STANDARD

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party

4

opposing the motion," *id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014).

> "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial."

*Serodio*, 27 F. Supp. 3d at 550.

### III.  DISCUSSION

In their motion, Defendants first argue that Plaintiff failed to properly exhaust his administrative remedies prior to filing suit, and that his complaint must be dismissed as a result. Pursuant to 42 U.S.C. § 1997e, before a prisoner may file a civil rights suit challenging "prison conditions," he is required to exhaust all available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006). Indeed, a prisoner is required to "exhaust administrative remedies even where the relief sought – [such as] monetary damages – cannot be granted by the administrative process." *Id.*; *see also Booth v. Churner*, 532 U.S. 731, 734 (2001). Where an administrative procedure is available, a plaintiff seeking to challenge prison conditions via a federal civil rights

5

action must fully and properly exhaust his administrative remedies prior to filing suit, and exceptional circumstances will not excuse a plaintiff's failure to exhaust his claims. *Ross v. Blake*, --- U.S. ---, ---, 136 S. Ct. 1850, 1856-57 (2016). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Booth v. Churner*, 206 F.3d 289, 298 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001).

As all of Plaintiff's federal claims, including both his § 1983 and ADA claims, arise out of his prison conditions as they relate to his placement on suicide watch without his wheelchair and alleged retaliations by prison employees, they are subject to § 1997e's exhaustion requirement. *Porter*, 534 U.S. at 532; *see also Brown v. U.S. Justice Dep't*, 271 F. App'x 142; 145-46 (3d Cir. 2008) (ADA claims also subject to § 1997e exhaustion where related to prison conditions). Thus, unless Plaintiff can show that administrative remedies were not available to him, his complaint must be dismissed unless he has properly exhausted all of his administrative remedies related to his claims prior to his filing suit in this matter. *Porter*, 534 U.S. at 532; *see also Garrett v. Wexford Health*, 938 F.3d 69, 84 (3d Cir. 2019) (complaint will be deficient and must be dismissed if the plaintiff was a prisoner when the complaint is filed and had not *already* exhausted his administrative remedies at the time of filing). "Proper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. To properly exhaust his claims, a prisoner must therefore seek all available administrative remedies and at least substantially comply with the applicable administrative rules and regulations imposed by the prison in which he was detained. *Id.* at 90-103; *Small v. Camden Cnty.*, 728 F.3d 265, 272 (3d Cir. 2013) (completion of the administrative review process requires

6

"substantial" compliance with the prison's grievance procedures). To determine whether a prisoner has properly exhausted his claims, a court must therefore look to the administrative grievance regime of the prison facility in question to determine what steps are required to properly exhaust a claim and determine whether the plaintiff substantially complied with these steps. *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

Plaintiff initially contends that he should not be required to exhaust his claims as he initially filed his action in state court. Section 1997e, however, does not limit its provisions solely to matters filed in federal court. Instead, the statute explicitly applies to any "action" which is "brought with respect to prison conditions under [42 U.S.C. §] 1983 . . . or any other Federal law, by a prisoner confined in a jail prison, or other correctional facility." Nothing in the statute limits its terms to suits brought in federal court, instead the limitations to the applicability of the exhaustion requirement is that it applies only to actions brought pursuant to federal law, and only to those who are prisoners at the time they filed suit. 42 U.S.C. § 1997e(a). Although the Third Circuit and Supreme Court have yet to squarely address the question, those courts of appeals which have addressed the question have upheld the application of the requirement to federal civil rights actions first filed in state court. *See, e.g., Jennings v. Dowling*, 642 F. App'x 908, 913 (10th Cir. 2016); *see also Gibbs v. Ozmints*, No. 08-3955, 2010 WL 2926164, at *7 (D.S.C. July 23, 2010); *aff'd* 421 F. App'x 272 (4th Cir. 2011). In light of the clear text of the statute which states that it applies to any action brought pursuant to federal law without restriction as to where the suit is first filed, and the Supreme Court's decisions finding that the requirement should apply to "all inmate suits about prison life," *Porter*, 534 U.S. at 532, this Court finds that the exhaustion requirement applies to federal civil rights claims raised in suits initially filed in state court, and thus applies to Plaintiff's federal claims even though he initially filed this matter in state court. The Court must therefore turn to whether Petitioner has properly exhausted his claims.

7

The parties agree on the applicable prison policies of South Woods State Prison. According to those policies, prisoners have access to two different forms they may use to seek redress from prison authorities – inquiry forms and grievance forms, with only grievance forms being appealable and capable of serving to properly exhaust an inmates claims. (ECF No. 34-2 at 14-15; ECF No. 37-1 at 6.) Under the policy, if an inmate is dissatisfied with a staff members response to his grievance, he may appeal his grievance by submitting an appeal within ten days of his receipt of the initial response. (*Id.*) Although a staff member can close a grievance when making a response, the closing of a grievance does not prevent an appeal and does not alleviate the requirement that an inmate appeal his grievance if unsatisfied with the response he receives. (*Id.*) Once an appeal is filed, the administrator renders a response to the appeal, at which point the grievance will be considered fully exhausted. (*Id.*)

The parties agree as to the grievances which Plaintiff filed. The record shows that Plaintiff filed a significant number of inquiry and grievance forms related to his placement in suicide watch. Initially, Plaintiff requested clarification through inquiry forms as to who gave the order to transfer him from the cell with the electrical outlet, which received responses stating that transfers were made based upon housing needs, and his inquiries were closed. (ECF No. 34-2 at 15.) In December 2020, Plaintiff filed a grievance asking whether the prison administrator ordered his transfer, and he received a similar response that transfers were made based on the needs of the institution. (*Id.* at 16.) Plaintiff did not appeal. On March 15, 2021, he filed an inquiry asking an officer about his transfer in August 2020, but was provided a response that the officer in question was not involved and that Plaintiff was now housed elsewhere. (*Id.*) Plaintiff also filed an inquiry about his conditions during his suicide watch stint, misnaming several officers names, and was given a response Plaintiff was no longer housed there and now had all of his property including his wheelchair. (*Id.* at 17.) Plaintiff then filed several more inquires, asking about several officers,

8

receiving responses that the officers, who he had misnamed, did not work at the prison, a response detailing how showers, food, and medication are handled during suicide watch, and a response noting that the event had occurred many months earlier and more information could not be provided without a more specific date. (*Id.* at 18.) No appeals resulted. (*Id.*)

On March 24, 2021, Plaintiff filed an inquiry and grievance directed to medical staff asking why staff would not enter his suicide watch cell to provide medication, for which he received a response stating that they had already discussed his concerns with him previously. (*Id.* at 18-19.) No appeal appears to have occurred. Plaintiff thereafter filed a grievance correcting the spelling of some officers' names and stating that officers did not help him off the floor while on suicide watch, and received a response stating that staff were trained to act appropriately and had done their jobs. (*Id.* at 19.) No appeal resulted. On April 18, 2021, Plaintiff filed a grievance asking how he was supposed to get his food and medication without his wheelchair while confined to a suicide watch cell, to which he received a response indicating that food and medicine are provided through a food port for safety reasons. (*Id.*) He did not appeal. On April 25, 2021, Plaintiff filed a grievance regarding his suicide watch stay detailing how a lieutenant had told staff Plaintiff needs his wheelchair and that it should not have been taken from him, and Plaintiff received a response indicating that medical had ordered that everything be taken from him as policy dictates that wheelchairs are not provided on suicide watch without a specific doctor's order that it be given. (*Id.* at 20.) The response also stated that records indicated that Plaintiff did not need the wheelchair to use the bathroom, but that if he were placed on watch again, Plaintiff could request to speak with a doctor on the chair issue. (*Id.*) Plaintiff did not appeal.

On April 25, 2021, Plaintiff also filed a grievance asking about Pipitone's failure to help him off the floor, for which he received a response that this question had previously been answered. (*Id.*) Plaintiff did not appeal. On June 7, 2021, Plaintiff filed a follow up grievance asking who

9

had told staff that he did not need his wheelchair to use the bathroom, to which staff responded that Plaintiff would be seen soon to discuss the issue. (*Id.* at 21.) Plaintiff filed another grievance asking again who took the call and gave that information, and was again told he could discuss the issue with staff. (*Id.*) No appeals were filed. (*Id.*)

Defendants argue that Plaintiff failed to properly exhaust any grievance as he never appealed his responses to the administrator. The records of Plaintiff's inquiry forms and grievances support this conclusion – Plaintiff filed a great number of inquiries and grievances at least tangentially related to his claims, but did not appeal them. (*See* ECF No. 34-5; ECF No. 34-6 at 11-18.) Plaintiff does not truly dispute this argument, but instead argues that his remedies were not available because he could not appeal responses that he believed did not address his concerns or fully respond to his grievance. In making this argument, Plaintiff relies on *Small v. Camden County*, 728 F.3d 265, 273-74 (3d Cir. 2013), in which the Third Circuit excused a failure to appeal a grievance where the prison policy in question permitted appeals only where a grievance officer had made a "decision," and no decision had been rendered as to the underlying grievance, preventing an appeal. South Woods policy, however, has no such requirement of a responsive "decision." Under the applicable policy, Plaintiff could appeal so long as he was unsatisfied with the staff's response. (ECF No. 34-4 at 3; ECF No. 34-6 at 9.) An appeal requires only a response, and not a rendered "decision." *Small*'s holding thus provides no basis for avoiding an appeal in this case. Here, Plaintiff received a response to all of the grievances he filed which could possibly served to exhaust his claims.[1] When Plaintiff found those responses unsatisfactory, he could have

---

[1] One could certainly argue that the responses to Plaintiff's June 2021 follow up grievances asking for the identity of the nursing staff member who had told previous staff grievance responders that he did not require a wheelchair to use the restroom did not receive a true response insomuch as Plaintiff was told he would be seen to discuss the issue in due course, but neither of those grievances could actually exhaust Plaintiff's claims as they were aimed not at the actual underlying events but rather on what medical staff member had provided information for a response to a

but did not file an appeal to the administrator. Because Plaintiff failed to do so, he has not exhausted his claims, and this Court must therefore dismiss all of his federal claims related to prison conditions without prejudice for failure to exhaust.

Because this Court will dismiss all of Plaintiff's federal claims for lack of exhaustion, the Court need not and does not address Defendants arguments as to the merits of Plaintiff's federal claims. Plaintiff's remaining claims all arise under state law – specifically the New Jersey Civil Rights Act and New Jersey Law Against Discrimination. Pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over which it has original jurisdiction, the Court should normally decline to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. Indeed, the Third Circuit has cautioned that where such a dismissal occurs prior to the onset of trial, "the district court must decline to decide the pendent state law claims unless considerations of judicial economy, convenience, and fairness" require the court hear those claims. *Borough f. W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). Where a case has been removed from state court and a district court declines supplemental jurisdiction after dismissing all of the plaintiff's federal claims, the correct procedure is to remand the state claims for consideration by the state court. *Id.* Because all of Plaintiff's federal claims shall be dismissed, this Court will decline supplemental jurisdiction over Plaintiff's state law claims, and will remand them back to state court for consideration by the state court.

---

previous grievance in April 2021. The arguable non-response to those two grievances is thus irrelevant to the exhaustion issue in this case.

11

## IV.  CONCLUSION

In conclusion, Defendants' motion to seal (ECF No. 36) is granted, Defendants' motion for summary judgment (ECF No. 34) is granted, Plaintiff's federal claims are all dismissed for failure to exhaust administrative remedies, and Plaintiff's state law claims are remanded to state court. An appropriate order follows.

Hon. Karen M. Williams,
United States District Judge